UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                            :

JORGE GARCIA,
                                                            :    **OPINION AND ORDER**
                    Petitioner,
                                                            :    **06 CV 10207 (SAS)**
          - against -
                                                            :    **99 CR 1113 (SAS)**
UNITED STATES OF AMERICA
                                                            :
                    Respondent.
-----------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/22/08

## I.    INTRODUCTION

Jorge Garcia, proceeding *pro se*, moves under Rule 4 of the Federal Rules of Appellate Procedure to reopen the time to file an appeal from his sentencing. Garcia also moves to vacate, set aside, or correct his sentence under section 2255 of title 28 of the United States Code ("section 2255").

## II.   BACKGROUND

### A.    The Offense Conduct

On December 28, 1999, a grand jury sitting in the Southern District of New York returned a fourteen-count superseding indictment (the "Indictment")

against Garcia and a number of his alleged co-conspirators.[1]  The Indictment

charged that, from 1995 to 1999, Garcia was a member of a criminal organization

led by Alex Restrepo (the "Restrepo Organization").[2]  The Restrepo Organization

was responsible for many armed robberies throughout the New York City

metropolitan area.[3]  One of these armed robberies resulted in the death of Donald

Pagani, a retired New York City Police Department detective who worked as a

security guard at American Sirloin Meat Company, a company that the Restrepo

Organization robbed.[4]

Count One of the Indictment charged Garcia with racketeering in

violation of section 1962(c) of title 18 of the United States Code.[5]  Count Two

charged Garcia with conspiracy to engage in racketeering activity in violation of

section 1962(d) of title 18 of the United States Code.[6]  Count Twelve charged

---

[1]     The Indictment superseded an earlier indictment filed October 26, 1999.  The previous indictment also identified Jorge Garcia and several alleged co-conspirators as the targets of prosecution.

[2]     *See* Indictment, Appendix to Government's Memorandum of Law in Opposition to Garcia Appeal ("Appendix") at A-7-8.

[3]     *See id.* at A-2-3.

[4]     *See id.* at A-8.

[5]     *See id.* at A-16.

[6]     *See id.* at A-17.

2

Garcia with murdering Pagani in aid of racketeering activity in violation of section 1959(a) of title 18 of the United States Code.[7] Count Thirteen charged Garcia with felony murder in aid of racketeering activity in violation of section 1959(a) of title 18 of the United States Code.[8]

## B. Garcia's Extradition

The Colombian National Police arrested Garcia on December 1, 1999 for the purpose of extraditing him to the United States.[9] Following an opinion of the Court of Appeals of the Supreme Court of Justice of Colombia, Colombia's Ministry of Justice and Law issued an extradition resolution for Garcia on January 11, 2002. The Extradition Resolution granted Garcia's extradition only on Counts One, Two, Twelve, and Thirteen of the Indictment.[10] Before delivering custody of Garcia to the United States, Colombia's Ministry of Foreign Relations requested that Garcia not be subjected to "forced disappearance, torture or cruel and unusual

---

[7]     *See id.* at A-24.

[8]     *See id.* at A-24-25.

[9]     Republic of Colombia, Ministry of Justice and Law, Resolution No. 12 of January 11, 2002 (the "Extradition Resolution") ¶ 2, Ex. H to Garcia Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Garcia Mem.") (translation provided by Assistant United States Attorney Helen V. Cantwell).

[10]    *Id.* ¶ 6.

punishment, degrading or inhumane treatment, exile, life imprisonment, confiscation without due process of law, or the imposition of the death penalty."[11] The United States Embassy responded that it could not guarantee that Garcia would not receive a life sentence, but agreed that Garcia would not be subjected to any of the other punishments that Colombia had listed.[12] Shortly thereafter, the United States took custody of Garcia and brought him to the Southern District of New York to face trial.

## C.   Garcia's Plea Allocution and Sentencing

On June 17, 2003, Garcia pled guilty to racketeering charges in Counts One and Two of the Indictment.[13] The plea was taken before a magistrate judge and, on September 19, 2003, this Court sentenced Garcia to a prison term of 292 months to be followed by five years of supervised release.[14] This sentence was at the low end of the range prescribed by section 2A1.1 of the Sentencing

---

[11]   Diplomatic Note No. 464 from the United States Embassy to Colombia's Ministry of Foreign Relations, Ex. I to Garcia Mem. (internal quotation marks omitted).

[12]   *See id.* The United States Embassy also promised not to seek life imprisonment for Garcia and assured Colombia that, if Garcia were sentenced to life imprisonment, the Government would request a reduction in the sentence.

[13]   *See* Transcript of Plea Allocution ("Plea Tr.") at A-26.

[14]   *See* Transcript of Sentencing ("Sentencing Tr.") at A-47.

4

Guidelines – the provision that applied to murder in aid of racketeering. At the

sentencing, Garcia's counsel, David Gordon, moved for a downward departure

based on Garcia's minimal involvement in the Pagani murder,[15] but the motion

was denied.

## D. Garcia's Appeal, Remand, and Resentencing

Garcia appealed his sentence. While waiting for the outcome of his

appeal, Garcia wrote a letter to his new counsel, Lawrence Gerzog, explaining that

he wanted to appeal to the Supreme Court following the Second Circuit's

decision.[16] On November 5, 2004, the Second Circuit upheld this Court's

sentence, but withheld the mandate for the case until the Supreme Court had

decided *United States v. Booker* and *United States v. Fanfan* – two cases involving

challenges to the Federal Sentencing Guidelines that were then pending before the

Supreme Court.[17] After the decision in those cases, the Second Circuit remanded

---

[15]     *See* Sentencing Tr. at 13:11-21, A-59.

[16]     *See* 7/14/04 Letter from Garcia to Gerzog, Ex. A-2 to Garcia Mem.
Although it is unclear why Garcia decided to appeal to the Supreme Court before
the Second Circuit issued its decision, it is clear that Garcia communicated to
Gerzog that he wanted to appeal whenever possible.

[17]     *See United States v. Garcia*, 114 Fed. Appx. 431, 434 (2d Cir. 2004)
(summary order).

5

Garcia's case to this Court pursuant to *United States v. Crosby*.[18] On September 30, 2005, this Court denied Garcia's motion for resentencing. Gerzog represented Garcia at the *Crosby* hearing. Garcia was not present at this hearing and it appears that he did not know it was occurring.[19] Furthermore, Gerzog neglected to report the hearing's outcome to his client.[20] As of May 19, 2006, over seven months after the *Crosby* hearing, Garcia was still unaware of the status of his case.[21] Shortly after learning of the Court's decision not to resentence him, Garcia wrote to the Court explaining that Gerzog had failed to keep him informed of the status of his case and that, as a result, he had lost his opportunity to appeal from this Court's decision not to resentence him and had been denied his Sixth Amendment right to participate in his defense.[22]

## II. APPLICABLE LAW

---

[18] 397 F.3d 103 (2d Cir. 2005).

[19] *See* 7/25/06 Letter from Garcia to Gerzog, Ex. E to Garcia Mem.

[20] *See* 7/27/06 Letter from Anne E. Glatz (Gerzog's associate) to Garcia, Ex. G to Garcia Mem.

[21] *See* 5/19/06 Letter from Garcia to the Clerk of Court for the Second Circuit Court of Appeals, Ex. B to Garcia Mem. (requesting information as to the status of his case).

[22] *See* 6/21/06 Letter from Garcia to the Deputy Clerk of this Court, Ex. C to Garcia Mem.

6

## A.    Rule 4(a)(6) and Rule 4(b) of the Federal Rules of Appellate Procedure

Garcia argues that, under Federal Rule of Appellate Procedure 4(a)(6) ("Rule 4(a)(6)"), this Court should reopen the period of time in which he can appeal from the resentencing decision. Rule 4(a)(6) applies only to civil cases; Federal Rule of Appellate Procedure 4(b) ("Rule 4(b)") applies to appeals in criminal cases.

Rule 4(b)(1)(A) requires criminal defendants to file a notice of appeal "within 10 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."[23] Rule 4(b)(4) allows a district court to extend this ten-day limit by a maximum of thirty days in cases of "excusable neglect or good cause."[24]

Courts can overlook failures to meet Rule 4(b)'s timing requirements when those failures result from constitutionally ineffective assistance of counsel. The Second Circuit has held that when ineffective assistance of counsel deprives a criminal defendant of an opportunity to appeal, a court may "circumvent appellate

---

[23]    Fed. R. App. P. 4(b)(1)(A).

[24]    Fed. R. App. P. 4(b)(4).

7

time limits by entering a new judgment."[25] This approach departs from the general policy of reserving Sixth Amendment ineffective assistance of counsel claims for collateral review,[26] but the Second Circuit has explained that such departures are justified when "it [is] undisputed that the defendant's trial counsel . . . rendered constitutionally ineffective assistance by failing to file a timely appeal that the defendant had requested."[27]

## B. Section 2255

Section 2255 allows a convicted person held in federal custody to petition the sentencing court to vacate, set aside, or correct a sentence. A properly filed motion under section 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[28] Accordingly, collateral relief under section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an

---

[25]   *United States v. Fuller*, 332 F.3d 60, 64 (2d Cir. 2003).

[26]   *See United States v. Mereno-Rivera*, 472 F.3d 49, 52 (2d Cir. 2006).

[27]   *Id.*

[28]   *See* 28 U.S.C. § 2255.

8

error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"[29]

## C.    Ineffective Assistance of Counsel

Garcia challenges the validity of his sentence on the ground that he was denied effective assistance of counsel.[30]  To establish ineffective assistance of counsel, a petitioner must:  (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms;"[31] and (2) "affirmatively prove prejudice" by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[32]

To demonstrate that counsel's performance fell short of constitutional standards, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument."[33]  Instead, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

---

[29]     *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[30]     *See* Garcia Mem. at 7.

[31]     *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[32]     *Id.* at 693-94.

[33]     *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

9

professional assistance . . . .'"[34] As the Supreme Court has explained,

> strategic choices made after thorough investigation of law and
> facts relevant to plausible options are virtually unchallengeable;
> and strategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable professional
> judgments support the limitations on investigation.[35]

Moreover, "[i]n assessing the attorney's performance, a reviewing

court must judge [her] conduct on the basis of the facts of the particular case,

'viewed as of the time of counsel's conduct,' and may not use hindsight to

second-guess [her] strategy choices."[36] Thus, a petitioner cannot prevail on a

claim of ineffective assistance simply because he disagrees with his counsel's

strategy.[37]

A habeas petitioner "may establish constitutionally inadequate

performance if he shows that counsel omitted significant and obvious issues while

---

[34]   *Id.* (quoting *Strickland*, 466 U.S. at 689).

[35]   *Strickland*, 466 U.S. at 690-91.

[36]   *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting
*Strickland*, 466 U.S. at 690).

[37]   *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (explaining that an
indigent appellant does not have a constitutional right to compel appointed
counsel to press every nonfrivolous point on appeal); *Mayo*, 13 F.3d at 533 ("[I]t
is not sufficient for the habeas petitioner to show merely that counsel omitted a
nonfrivolous argument, for counsel does not have a duty to advance every
nonfrivolous argument that could be made.").

10

pursuing issues that were clearly and significantly weaker."[38] But even when a

petitioner can show that an attorney's performance was objectively unreasonable

and unprofessional, the petitioner must still prove prejudice. That is, the petitioner

must show "'a reasonable probability' that, but for the deficiency, 'the result of the

proceeding would have been different.'"[39]

## III. DISCUSSION

### A. Rule 4(b) of the Federal Rules of Appellate Procedure

Constitutionally ineffective assistance of counsel deprived Garcia of

his right to appeal from his resentencing. Gerzog knew that Garcia wanted to

appeal his case up to the Supreme Court if necessary[40] and nonetheless neglected

to file a notice of appeal from this Court's resentencing decision. Furthermore,

Gerzog's failure to notify Garcia of the decision prevented Garcia from filing a

notice of appeal himself. The Government agrees that, because of these

shortcomings, Gerzog's representation of Garcia was constitutionally ineffective.[41]

---

[38]    *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citing *Mayo*, 13 F.3d at 533).

[39]    *Aparicio*, 269 F.3d at 95 (quoting *Strickland*, 466 U.S. at 694).

[40]    *See* 7/14/04 Letter from Garcia to Gerzog, Ex. A-2 to Garcia Mem.

[41]    *See* Memorandum of Law in Opposition to Garcia Petition at 7. Furthermore, the Government agrees that the Court should vacate its original order and issue a new one.

Thus, "it [is] undisputed that the defendant's trial counsel . . . rendered constitutionally ineffective assistance by failing to file a timely appeal that the defendant had requested,"[42] and this Court may provide Garcia with a new opportunity to appeal. Accordingly, I hereby vacate my original decision not to resentence Garcia. Upon further consideration, I once again conclude that no resentencing is necessary and therefore again deny the motion to impose a new sentence.

## B.  Ineffective Assistance of Counsel

Garcia asserts that he received ineffective counsel not only from Gerzog, but also from Gordon, his original counsel. Garcia identifies four ways in which Gordon provided ineffective legal assistance: (1) Gordon failed to object to various violations of agreements that the Government had entered into;[43] (2) Gordon failed to explain to Garcia the nature and elements of each offense to which he was pleading guilty;[44] (3) Gordon failed to object to this Court's use of "extraneous" evidence when sentencing Garcia;[45] and (4) Gordon failed to object

---

[42]    *Mereno-Rivera*, 472 F.3d at 52.

[43]    *See* Garcia Mem. at 7-9.

[44]    *See id.* at 9-11.

[45]    *See id.* at 11-12.

to the insufficiency of the plea allocution.[46]

## 1. Alleged Violations of the Extradition Resolution

Garcia claims that his prosecution was inconsistent with the terms of
the Extradition Resolution. The Extradition Resolution provides that the United
States can prosecute Garcia only for offenses in Counts One, Two, Twelve, and
Thirteen of the Indictment[47] and, according to Garcia, the Government agreed not
to prosecute him for offenses in Counts Twelve and Thirteen in exchange for his
guilty plea to Counts One and Two.[48] Garcia further contends that the Extradition
Resolution "disallowed extradition for all charges associated with robberies and
use of firearms during crimes committed."[49] Finally, Garcia asserts that the
Extradition Resolution contained a temporal restriction prohibiting the
Government from prosecuting him for crimes predating December 16, 1997.[50] By
failing to object to violations of these terms, Garcia argues, Gordon rendered
constitutionally ineffective assistance of counsel.

---

[46]   *See id.* at 12-13.

[47]   Extradition Resolution ¶ 6, Ex. H to Garcia Mem.

[48]   *See* Garcia Mem. at 8.

[49]   *Id.*

[50]   *See id.*

13

Garcia's arguments are without merit. With respect to each alleged

violation, Garcia either has failed to show that a violation of the agreement in

question actually occurred or has failed to demonstrate that the alleged violation

would have affected the outcome of his case. It is therefore unnecessary to

address whether the terms of the Extradition Resolution are binding either on the

Government in prosecuting Garcia or on this Court in sentencing him.

## a. The Charges Brought Against Garcia

The Extradition Resolution provides that the Government can only

prosecute Garcia for crimes identified in Counts One, Two, Twelve, and Thirteen

of the Indictment. In addition, Garcia alleges that the Government informally

agreed not to prosecute him for crimes identified in Counts Twelve and Thirteen

of the Indictment.[51] Garcia claims that the Government violated this informal

agreement by pursuing these latter two charges.[52]

Garcia pled guilty, however, only to Counts One and Two, and the

Government then dismissed all other counts against him.[53] Garcia claims that the

---

[51]    *See id.*

[52]    *See id.*

[53]    *See* Sentencing Tr. at 33:20-23, A-79.

14

Government pursued Counts Twelve (murder) and Thirteen (felony murder)[54] because the conduct underlying those counts overlapped with the conduct underlying Counts One and Two. Counts Twelve and Thirteen focus exclusively on the murder of Donald Pagani; Counts One and Two address various actions of members of the Restrepo Organization as violations of the racketeering laws. Garcia's involvement in Pagani's murder was therefore covered by Counts One and Two.

Because the Government permitted Garcia to plead guilty to Counts One and Two and because it dismissed the remaining charges, it did not violate the alleged agreement with Garcia. It was reasonable for Gordon not to object to Garcia's prosecution on Counts One and Two. Gordon's performance thus meets the objective standard of reasonableness under *Strickland*.

### b. The Alleged Bar on Charges Associated with Robberies and Firearms

Garcia next claims that the Extradition Resolution "disallowed extradition for all charges associated with robberies and use of firearms during crimes committed."[55] While the Extradition Resolution does not allow the

---

[54]    *See* Garcia Mem. at 8.

[55]    *Id.*

15

Government to prosecute Garcia under Counts Five (use and carrying of a firearm), Ten (conspiracy to commit robbery), Eleven (robbery), and Fourteen (use and carrying of a firearm), it does not contain any categorical bar on crimes involving robberies or firearms. In fact, because all of the charges against Garcia involve either robbery or the use of a firearm, the extradition would have been useless if it did not allow the Government to prosecute Garcia for any crimes involving robberies or firearms. Garcia's understanding of the Extradition Resolution is thus unfounded and implausible.

### c. Temporal Restrictions on Conduct for Which the Government Can Prosecute Garcia

Finally, Garcia asserts that the Extradition Resolution prohibits the Government from prosecuting him for any crimes that predate December 16, 1997.[56] Although the Extradition Resolution does not include any explicit temporal restriction, Article 35 of the Colombian Constitution, which was enacted December 16, 1997, states, "[e]xtradition will not apply when the facts took place previous to the promulgation of this norm."[57] Even assuming that this provision of the Colombian Constitution is implicitly incorporated into the Extradition

---

[56]    *See id.*

[57]    Constitution of Colombia, Art. 35.

16

Resolution, Garcia's ineffective assistance of counsel argument fails. Gordon's failure to object to any supposed violation of this provision does not qualify as ineffective assistance of counsel under the *Strickland* standard because Garcia cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[58]

The Indictment charges Garcia with four racketeering acts: (1) the robbery of a Bravo Supermarket in Jackson Heights, New York on February 3, 1997;[59] (2) the June 1998 invasion of a home in Queens, New York;[60] (3) the August 1999 robbery of a meat company in the Bronx, New York, which resulted in the murder of Donald Pagani;[61] and (4) robberies of drug dealers and sale of drugs from 1995 through 1998.[62] While some of these acts predate the December 16, 1997 cutoff, the crucial act for sentencing purposes was the August 1999 robbery that led to the Pagani murder. The Pagani murder was the only relevant

---

[58]    *Strickland*, 466 U.S. at 694.

[59]    *See* Indictment at A-11-12.

[60]    *See id.* at A-12.

[61]    *See id.* at A-13-14.

[62]    *See id.* at A-15-16.

offense in determining Garcia's overall offense level.[63] Because the Pagani

murder was the decisive act for sentencing purposes, and because that murder took

place after December 16, 1997, any mistake Gordon might have made in failing to

raise this temporal restriction would not have altered the outcome of the

sentencing. This argument therefore fails to satisfy *Strickland*'s prejudice

requirement.

## 2. The Nature and Elements of the Offenses

Garcia claims that, at the time of his guilty plea, he did not fully

understand the offenses to which he was pleading guilty. According to Garcia,

Gordon induced his guilty plea by telling him that he "would not be adjudicated

for the murder of Pagani or any other individuals related to Restrepo Organization

criminal activities."[64] Garcia insists that he would not have pled guilty to Pagani's

murder because he did not consider himself responsible for it.[65] At his plea

allocution, however, Garcia explicitly accepted responsibility for Pagani's death,

---

[63]    *See* Sentencing Tr. at 19:08-20:02, Appendix, A-65-66 ("[T]he robbery felony murder of Donald Pagani [yields a] base offense level [of] 43 . . . . The highest offense level is 43. Because all of the other offense levels are more than seven levels lower, there is only one unit so the final offense level remains 43.").

[64]    Garcia Mem. at 10.

[65]    *See id.* at 10-11.

18

saying "I was not at the scene of the crime but I feel guilty because I did participate and I was a member of the conspiracy . . . and I received part of the proceeds of this robbery."[66]

According to Garcia, Gordon failed to explain to him that pleading guilty to the racketeering charges in the Indictment would expose him to sentencing "as if [he had been] found guilty of the substantive murder counts."[67] Even assuming that this allegation is true, it does not satisfy the *Strickland* requirements. At the plea allocution, the Magistrate Judge clearly explained that Garcia's guilty plea could yield a maximum penalty of "a prison term of life imprisonment."[68] Moreover, Garcia stated that he understood that his guilty plea could lead to life imprisonment.[69] Testimony carries "a strong presumption of verity" and the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."[70]

Garcia's sworn statements conclusively demonstrate that he

---

[66]   Plea Tr. at 14:6-9, A-39.

[67]   Garcia Mem. at 10.

[68]   Plea Tr. at 6:7-8, A-31.

[69]   *See id.* at 6:14-16, A-31.

[70]   *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citation omitted).

19

understood the relevance of his plea. Consequently, any failure of counsel to explain the plea to him cannot have materially affected his decision to enter the plea. This argument thus fails to satisfy *Strickland*'s prejudice prong.

## 3. Evidence the Court Used at Sentencing

Garcia next claims that he received constitutionally ineffective assistance of counsel because Gordon failed to object to the presentation of certain evidence at Garcia's sentencing. The evidence in question was introduced at the trial of Garcia's co-conspirators, and Garcia claims that neither he nor Gordon had an opportunity to review this evidence before his sentencing hearing.[71] This assertion cannot be true because, at sentencing, Gordon introduced trial testimony of Nelson Baez, one of Garcia's co-conspirators.[72] Gordon therefore must have had prior access to this evidence.

Assuming *arguendo* that Gordon did not share this evidence with Garcia, Gordon's failure to object to the introduction of the evidence did not necessarily prejudice Garcia. At sentencing, Gordon agreed that there were no fact issues in dispute and, consequently, that the Court did not need to conduct a

[71]   *See* Garcia Mem. at 11.

[72]   *See* Sentencing Tr. at 6:5-7, A-52.

20

*Fatico* hearing.[73] Gordon then proceeded to cite testimony from Garcia's co-conspirators' trial to make arguments in Garcia's favor.[74] It thus appears that Gordon made a strategic decision to use evidence from Garcia's co-conspirators' trial to argue that Garcia should receive a relatively light sentence. If this was Gordon's strategy, then objecting to the introduction of this evidence would have been self-defeating. Given the substantial deference that courts accord lawyers' strategic decisions, Gordon's decision here does not fall below *Strickland*'s objective standard of reasonableness.

## 4. The Magistrate Judge's Plea Colloquy

Finally, Garcia argues that he received constitutionally ineffective assistance of counsel because Gordon failed to object to the Magistrate Judge's plea colloquy. According to Garcia, the plea colloquy was insufficient because the Magistrate Judge "did not properly explain the elements of the offenses" to which Garcia was pleading guilty.[75] Furthermore, Garcia claims that the Magistrate Judge should have explained that Garcia was effectively taking responsibility for

[73]     *See id.* at 5:22-23, A-51.

[74]     *See, e.g., id.* at 5:23-25, 6:5-7, 6:12-7:10, 9:2-9, 11:23-12:2, A-51-53, A-55, A-57-58.

[75]     Garcia Mem. at 12.

21

Pagani's murder and that he would be sentenced accordingly.[76]

The plea colloquy did not suffer from the defects that Garcia now alleges. At the plea allocution, the Government detailed the elements of the crimes to which Garcia was pleading guilty.[77] Garcia then provided the basis for his plea by explaining how he was guilty of the crimes in question. He described his association with the Restrepo Organization and his participation in various robberies.[78] Garcia's own allocution reveals his understanding of the crimes to which he was pleading guilty. Furthermore, Garcia explicitly accepted responsibility for Pagani's murder[79] and testified that he understood that his guilty plea could yield a sentence of life imprisonment.[80] Because there were no problems with the plea colloquy, Gordon had no reason to object to it. Gordon's performance therefore meets the objective standard of reasonableness under the first prong of *Strickland* and Garcia's argument for ineffective assistance of

---

[76]   *See id.* at 13.

[77]   *See* Plea Tr. at 11:6-13:19, A-36-38.

[78]   *See id.* at 13:20-20:1, A-38-45.

[79]   *See id.* at 14:6-9, A-39 ("I was not at the scene of the crime but I feel guilty because I did participate and I was a member of the conspiracy of this crime and I received part of the proceeds of this robbery.").

[80]   *See id.* at 6:6-16, A-31.

counsel fails.

## IV.  CONCLUSION

For the foregoing reasons, Garcia's Rule 4 motion is granted and his section 2255 motion is denied. The Court vacates its September 30, 2005 decision not to resentence Garcia and hereby issues a new decision not to resentence him. Finally, there is the question of whether to grant a certificate of appealability. For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[81] The "substantial showing" requirement does not mean that a petitioner must demonstrate that he would prevail on the merits; it simply means that a petitioner must show "'that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"[82] Garcia has made no such showing in this case. Accordingly, this Court will not issue a certificate of appealability and the Clerk of Court is directed to close Garcia's Section 2255 petition as well as his

---

[81]    28 U.S.C. § 2253(c)(2).

[82]    *Middleton v. Attorneys General of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted)).

23

motion to enlarge his time to appeal [no. 1 on the 06 CV 10207 docket sheet and "Motion to Vacate" filed 10/23/06 on the 99 CR 1113 docket sheet].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 18, 2008

**Petitioner (Pro Se):**

Jorge Garcia
# 53739-054
FCI - Schuylkill
P.O. Box 759
Minersville, Pennsylvania 17954-0759

For Respondent:

Helen V. Cantwell
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200